U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 27, 2006**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| WALTER B. FITCH, | § | CASE NO. 03-38469-SGJ-7 |
|     DEBTOR. | § | |
| | § | |
| | § | |
| RANDY FITCH, GUARDIAN OF THE | § | |
| PERSON AND ESTATE OF EVELYN | § | |
| FITCH GEORGE, AN INCAPACITATED | § | |
| ADULT, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 05-3695 |
| | § | |
| WALTER B. FITCH, | § | |
|     DEFENDANT. | § | |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

Before this court are cross motions for summary judgment concerning a complaint to determine dischargeability of debt, involving 11 U.S.C. § 523(a)(4) and (7).  This court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2)(A) and (I). This memorandum opinion constitutes the court's findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014. Where appropriate, a finding of fact will be construed as a conclusion of law and vice versa.

<u>II. FACTUAL BACKGROUND</u>

None of the material facts are in dispute with respect to the cross motions for summary judgment.

<u>A. Subject Matter of the Adversary Proceeding.</u>

This dischargeability adversary proceeding arises from certain real estate transactions involving the homestead property (the "Property") of Evelyn Fitch George (the "Ward"). Randy Fitch (the "Plaintiff") and Walter B. Fitch (the "Defendant") are the Ward's sons. Randy Fitch was appointed Guardian of the Person of the Estate of the Ward on August 8, 2000, and in that capacity is the Plaintiff herein.

On February 15, 1995, before Plaintiff was appointed the Ward's guardian, the Ward executed a Special Durable Power of Attorney for Sale of Real Estate permitting Defendant to act as her agent with respect to the Property. The Defendant entered into an agreement on the Ward's behalf to sell the Property to a company known as Universal Funding Corporation, Inc. ("UFC") for $125,000 on September 10, 1996. The President of UFC was a business partner of the Defendant. On December 20, 1996, UFC

-2-

entered into an agreement with the City of Bedford for the sale
of the Property for $275,000.  Both real estate transactions
(collectively, the "Sales Transactions") closed on January 7,
1997.

    B.  <u>Probate Court Default Judgment.</u>

    Plaintiff, after becoming guardian of the Ward (on August
11, 2000), and feeling as though the Defendant had scammed the
Ward out of $150,000 by "flipping" the Property from the Ward to
UFC (a company with whom Defendant had some business
relationship), and then to the City of Bedford on the same day,
brought an action in Tarrant County, Texas Probate Court Number
Two (the "Probate Court"), Cause No. 99-3105-A-2, against
Defendant regarding the Sales Transactions and other matters,
alleging (i) fraud (constructive and statutory) and (ii) breach
of fiduciary duties (duties of loyalty and disclosure).  The
Probate Court action was timely filed within the four-year
statute of limitations for bringing a fraud action in Texas,
pursuant to the Texas Civil Practice and Remedies Code § 16.004.
On May 16, 2001, Plaintiff obtained a no-answer default judgment
in the Probate Court (the "Default Judgment").  The Default
Judgment awarded two categories of damages to the Plaintiff.  The
Category 1 damages consisted of $150,000 in actual damages
arising from the price difference between the two sales of the
Property, $11,464.11 in prejudgment interest, $35,406.70 in

attorney's fees, and $300,000 in exemplary damages (total
Category 1 damages: $496,870.81).  Category 2 damages consisted
of $252,808.36 in actual damages (apparently arising from
unrelated allegations of misuse or appropriation of certain funds
of the Ward by the Defendant), $19,323.54 in prejudgment
interest, and $505,616.72 in exemplary damages (total Category 2
damages: $777,748.62).  The Plaintiff is now seeking to have all
of the damages set forth in the Default Judgment declared non-
dischargeable debt, pursuant to 11 U.S.C. § 523(a)(4) (as debts
arising from fraud while acting in a fiduciary capacity or
arising from larceny).  However, as further explained below, only
the Category 1 damages set forth in the Default Judgment are
addressed in the Plaintiff's Motion for Partial Summary Judgment.

   C.   Criminal Action.

   On December 17, 2001 (after entry of the Default Judgment in
the Probate Court), the State of Texas filed a criminal complaint
against Defendant, apparently relating to Defendant's actions in
connection with the Sales Transactions.  Criminal Complaint No.
0928568 filed December 17, 2001 in Tarrant County, Texas (the
"Criminal Complaint"), provides that "Walter Bobo Fitch . . . in
the County of Tarrant and State [of Texas] *on or about the 6th
day of January 199*7, did then and there unlawfully appropriate,
by acquiring or otherwise exercising control over property, to
wit: money, of the value of $100,000 or more, but less than

-4-

$200,000, with intent to deprive the owner, William Fitch, of the Property" (emphasis added).  While the Criminal Complaint is not explicit in describing the acts that are at issue,[1] the Plaintiff alleges—and one can reasonably infer—that the Sales Transactions are what was at issue, since the complained-of act is described as occurring "on or about the 6th day of January 1997" (the closing of both of the Sales Transactions occurred on January 7, 1997) and the value of the alleged theft that occurred was between $100,000 and $200,000 (the profit that the Defendant and/or UFC allegedly made in connection with the Sales Transactions was $150,000).  On December 18, 2001, in response to the Criminal Complaint, Defendant pled guilty to second degree theft and was ordered to pay $150,000 in restitution as part of his community supervision agreement (the "Criminal Restitution Order").  The Criminal Restitution Order and the underlying "Written Plea Admonishments" (herein so called) signed by the Defendant are even less explicit as to what exact acts the Defendant committed to which the Defendant was pleading guilty. The Written Plea Admonishment merely indicates that the Defendant had been charged with the felony offense of "Theft 100,000-200,000," to which the Defendant was pleading guilty, and with

---

[1] Not only is the Criminal Complaint not explicit, but it is apparently not entirely accurate, since it refers to William Fitch as the owner of the Property, and he was not the owner of the Property, nor the guardian of the Ward, on January 6, 1997.

regard to which the Defendant accepted a plea bargain recommendation of 10 years deferred adjudication and "restitution of $150,000."

### D. Bankruptcy Filing by Defendant.

Defendant filed a Chapter 7 petition on August 22, 2003. Defendant listed the Ward on Schedule F as having a judgment but specified that the claim associated therewith was of an unknown amount and was contingent in nature. Defendant listed the Ward's address on Schedule F and on his Creditors Mailing Matrix as the same as his own, despite the fact that Plaintiff had been the Ward's guardian for approximately three years at the time of Defendant's petition in bankruptcy. Thus, actual notice of the Defendant's bankruptcy to the Plaintiff/Ward was initially deficient.

### E. Filing of the Adversary Proceeding by Plaintiff.

Having later been notified by Defendant's counsel of Defendant's bankruptcy, Plaintiff filed the complaint initiating this adversary proceeding, objecting to the dischargeability of the debts arising from the Default Judgment and the Criminal Restitution Order, on October 20, 2005, under 11 U.S.C. §§ 523(a)(3) and (4). Defendant answered the original complaint on November 15, 2005, denying that the Default Judgment and the Criminal Restitution Order created nondischargeable debts, pursuant to 11 U.S.C. §§ 523(a)(3) and (4). Plaintiff then

-6-

sought and was granted leave to file an amended complaint.   On
February 14, 2006, Plaintiff filed an amended complaint adding an
objection to dischargeability of the Criminal Restitution Order
obligations pursuant to 11 U.S.C. § 523(a)(7).   Defendant
answered the amended complaint, reasserting his denials set forth
in his original answer, but admitting that the Criminal
Restitution Order obligations are nondischargeable pursuant to 11
U.S.C. § 523(a)(7).[2]

On April 5, 2006, Plaintiff filed his Plaintiff's Motion for
Partial Summary Judgment and accompanying brief in support (the
"Plaintiff's Brief"), seeking summary adjudication that the
Criminal Restitution Order obligations *and* the Category 1
obligations under the Default Judgment are nondischargeable,
pursuant to 11 U.S.C. § 523(a)(4).   Plaintiff's Brief also
includes a request that the court enter an order that the
Criminal Restitution Order obligations are nondischargeable
pursuant to 11 U.S.C. § 523(a)(7).   On April 7, 2006, the
Defendant filed his Defendant's Summary Judgment Motion and
memorandum of law (the "Defendant's Motion Brief") in support
thereof, as well as a response to the Plaintiff's Motion for
Partial Summary Judgment (the "Defendant's Response") and
memorandum of law in support of the response (the "Defendant's
Response Brief").   By his motion and his response, the Defendant

_____

[2] *See Kelly v. Robinson*, 479 U.S. 36 (1986).

-7-

seeks summary adjudication in his favor as to all counts.  The

Defendant asserts that he is entitled to summary judgment because

the Plaintiff is barred from litigating fraud pursuant to the

four-year statute of limitation for pursuing fraud actions in

Texas.  On May 5, 2006, the Plaintiff filed his response to the

Defendant's Summary Judgment Motion ("Plaintiff's Response") and

brief in support thereof ("Plaintiff's Response Brief").  On May

19, 2006, Plaintiff filed his reply brief to Defendant's Response

("Plaintiff's Reply Brief").

    F.  Agreements as to the Disputed Issues in the Adversary
Proceeding.

    Plaintiff and Defendant subsequently agreed that the section

523(a)(3) cause is no longer in dispute because, by this

adversary proceeding, Plaintiff now has an opportunity to have

his objection to dischargeability of the debts heard.  Moreover,

the parties also agree that the $150,000 in restitution payments

provided in the Criminal Restitution Order are nondischargeable

pursuant to 11 U.S.C. § 523(a)(7).

    G.  Issues and Arguments.

    Thus, the remaining issue for this court on the cross

motions for summary judgment is whether the Category 1 damages

set forth in the Default Judgment (total Category 1 damages:

$496,870.81) are nondischargeable pursuant to 11 U.S.C.

§ 523(a)(4).  Specifically, Plaintiff argues that the Defendant

is collaterally estopped from arguing that the amounts set forth

-8-

in Category 1 of the Default Judgment are dischargeable because of his subsequent guilty plea to "theft" entered in the criminal proceeding, which criminal proceeding involved the same conduct which formed the basis for the Category 1 damages (*i.e.,* the Sales Transactions). Plaintiff argues that "theft" is essentially the same as "larceny," as used in 11 U.S.C. § 523(a)(4), thus, collateral estoppel should be applied to preclude Defendant from challenging the nondischargeability of the Category 1 damages set forth in the Default Judgment, pursuant to the "larceny" prong in 11 U.S.C. § 523(a)(4). Defendant, on the other hand, argues that Plaintiff may not use collateral estoppel offensively because: (a) Plaintiff failed to plead the doctrine in his complaint or the amended complaint; (b) the collateral estoppel doctrine does not apply with regard to a default judgment under Texas law—and Plaintiff cannot essentially bootstrap the subsequent guilty plea from the criminal proceeding (which was unsupported by detailed findings of facts) and use it as a basis to argue that Defendant is now collaterally estopped from challenging the elements of damages set forth in the Default Judgment; and (c) Plaintiff is barred from litigating the underlying fraud and fiduciary duty claims by the doctrine of laches and the statute of limitations that apply to fraud and breach of fiduciary duty claims in the state of Texas.

-9-

H.   Hearing.

A hearing on the cross motions for summary judgment was held before this court on May 24, 2006.  Several procedural/evidentiary disputes arose in connection therewith. Specifically, on May 5, 2006, the Defendant filed his Objection to and Motion to Strike Plaintiff's Summary Judgment Evidence (the "Defendant's Motion to Strike").  Also on May 5, 2006, the Plaintiff filed his Motion to Strike Affidavit of Joyce W. Lindauer ("Plaintiff's First Motion to Strike") and brief in support.  Each party filed responses to these motions to strike. At the hearing, the court denied the Defendant's Motion to Strike and the Plaintiff's First Motion to Strike.  Also on May 19, 2006, Plaintiff filed his Objection to and Motion to Strike Summary Judgment Evidence Contained in the Appendix to Walter B. Fitch's Response to Plaintiff's Motion for Partial Summary Judgment (the "Plaintiff's Second Motion to Strike").  The court took under advisement Plaintiff's Second Motion to Strike and the court has now decided to grant it in part and deny it in part.[3]

---

[3] Specifically, the court will allow the affidavit testimony of the Defendant, Walter "Bo" Fitch, since it, and specifically the testimony therein dealing with his decision not to fight the criminal proceeding, have some relevance to the appropriateness of allowing the offensive use of the collateral estoppel doctrine (as will be further explained herein and in a separate order). However, the court will strike the other affidavit testimony that is the subject of the Second Motion to Strike, since all other affidavits involve witness testimony going to the state of mind or mental capacity of the Ward at or near the time of the Sales Transactions and, for purposes of these cross motions for summary

-10-

Resolution of Plaintiff's Motion for Partial Summary
Judgment and Defendant's Summary Judgment Motion is as set forth
hereinbelow.

### III.  LEGAL ANALYSIS

#### A.  Summary Judgment

Summary judgment is appropriate if "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  "A summary judgment motion is properly granted only when,
viewing the evidence in the light most favorable to the nonmoving
party, the record indicates that there is no genuine issue as to
any material fact."  *Am. Home Assurance Co. v. United Space
Alliance, LLC,* 378 F.3d 482, 486 (5th Cir. 2004).  The
materiality of facts is governed by substantive law, and only
facts that might affect the outcome of the suit will preclude
summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
248 (1986).  The court must review the factual and legal issues
presented in order to make a determination on the summary

_____

judgment, such evidence is not relevant, since the Plaintiff and
Defendant have agreed that the remaining issues are all
legal—*i.e.,* the applicability of the doctrines of collateral
estoppel, laches and the statute of limitations.  The Ward's
state of mind has no relevance to these legal doctrines.  A
separate order will be entered regarding Plaintiff's Second
Motion to Strike.

judgment motions of each party, and must view those facts in the light most favorable to the Defendant when considering the Plaintiff's Motion for Partial Summary Judgment and in the light most favorable to the Plaintiff when considering the Defendant's Motion for Summary Judgment.

    <u>B.</u>  <u>The Plaintiff's Ability to Use the Collateral Estoppel Doctrine Offensively</u>

    The Plaintiff argues collateral estoppel prevents the Defendant from arguing that the Default Judgment is not nondischargeable.  The Plaintiff asserts that the combined force of the Criminal Restitution Order and the Default Judgment collaterally estop the Defendant from challenging the nondischargeability of the Category 1 debt established by the Default Judgment.

    Collateral estoppel may apply in bankruptcy dischargeability proceedings.  *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997).  It may be used in an offensive manner by a plaintiff, and trial courts have broad discretion as to whether offensive collateral estoppel may be permitted. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979). The Supreme Court cautioned trial courts against the use of offensive collateral estoppel for two reasons.  First, offensive use of collateral estoppel does not promote judicial economy because it might encourage plaintiffs to take a "wait and see" approach in civil litigation.  *Id.* at 329-30.  Second, judicial

-12-

estoppel may be unfair to a defendant, especially if the first action involves a nominal amount of damages or if the defendant did not anticipate additional future litigation arising from the same transactions.  *Id.* at 330.

The present case does not raise the first concern in *Parkland Hosiery* because the Plaintiff could not have joined his nondischargeability claim with the state's criminal complaint in the interest of judicial economy.  The second concern presented by the Supreme Court may apply to this case.  The Defendant alleges through affidavit that he accepted the plea bargain because he could not afford to litigate the criminal charge after consulting with his attorney.  However, it is unlikely that the Defendant did not have the necessary incentive to litigate the criminal charge.  The Fifth Circuit has found that serious criminal charges provide motivation to "litigate and litigate to the finish."  *Wolfson v. Baker*, 623 F.2d 1074, 1080 (5th Cir. 1980).  If, however, the Defendant believed that future litigation would not arise based on his guilty plea, allowing collateral estoppel to prevent his challenging the Plaintiff's assertions in this adversary proceeding could be unfair to the Defendant.  For the reasons set forth in subsection III.C. below, this court does not believe that the issue of whether "Defendant believed that future litigation would or would not arise based on his guilty plea" is a material fact that the court needs to reach

in deciding whether to allow Plaintiff to use offensive collateral estoppel in this adversary proceeding.  As will be explained in subsection III.C. below, there are other reasons why the collateral estoppel doctrine cannot be used effectively by the Plaintiff herein.

The Defendant also argues that offensive collateral estoppel must be pled by the Plaintiff in the complaint or amended complaint in order to be used offensively.  Fed. R. Civ. P. 8(c), made applicable in this proceeding by Fed. R. Bankr. P. 7008(a), requires that, in "a pleading to a preceding pleading," a party must affirmatively plead certain defenses, including collateral estoppel.  The Fifth Circuit held that an affirmative defense under Fed. R. Civ. P. 8(c) is waived if the defense is not pled. *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 172 (5th Cir. 1985). This case does not involve the use of collateral estoppel as an affirmative defense, but an offensive use of the doctrine. "[W]here a party seeks to employ collateral estoppel offensively, however, a court has broad discretion to determine whether relitigation of an issue should be precluded." *Baros v. Texas Mexican Ry. Co.*, 400 F.3d 228, 232 (5th Cir. 2003).  The Fifth Circuit has not addressed the necessity of affirmatively pleading offensive collateral estoppel.  The Eastern District of Washington has, however, addressed a similar situation in *U.S. v. United Air Lines, Inc.*, 216 F.Supp. 709 (E.D. Wash. 1962).  The

-14-

court reasoned that an affirmative defense has to be pled "to give notice to the opposite side so that it may have an opportunity to rebut same." *Id.* at 718. The court held that such additional notice was not required with regard to offensive collateral estoppel because notice and an opportunity to rebut the assertion of the doctrine was achieved by the motions for summary judgment. *Id.*

This court follows the reasoning used in *United Air Lines*. A complaint is not a responsive pleading ("a pleading to a preceding pleading") as contemplated by Fed. R. Civ. P. 8(c), but an initiating pleading. The Plaintiff gave ample notice to the Defendant of his intent to use collateral estoppel offensively when he raised the doctrine in Plaintiff's Motion for Partial Summary Judgment. The Defendant had the opportunity to rebut the Plaintiff's assertion of collateral estoppel and availed himself of that opportunity. The Plaintiff did not unfairly surprise the Defendant when he raised collateral estoppel in Plaintiff's Motion for Partial Summary Judgment. Accordingly, Plaintiff's offensive use of collateral estoppel is not barred for the Plaintiff's failure to plead it in the complaint or the amended complaint.

C. Even if Plaintiff has the Ability to Use the Collateral Estoppel Doctrine Offensively in a Dischargeability Action, the Elements are Not Met to Justify the Application of the Doctrine Here.

So when, under Texas law, can the doctrine of collateral

-15-

estoppel be applied?  Collateral estoppel applies where "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 351 n.4 (5th Cir. 2004).  Each condition must be met in order for collateral estoppel to apply.

Taking these elements out of order, with regard to element (3)—whether the parties were cast as adversaries in the first action—strict mutuality of parties is not necessary for the court to apply collateral estoppel. *McCoy v. Hernandez*, 203 F.3d 371, 374 (5th Cir. 2000).  However, the party asserting collateral estoppel must have at least been in privity with the party in the first action.  *Id.*  When applying collateral estoppel, parties are in privity with one another when "(1) they control an action even if they are not parties to it; (2) their interests are represented by a party to the action; or (3) they are successors in interest, deriving their claims through a party to the prior actions."  *Id.*  Although there is absolute mutuality of parties with regard to the Default Judgment, the Plaintiff cannot meet strict mutuality of parties with regard to the Criminal Restitution Order.  Plaintiff has a strong argument, however, that his interests were represented by the State of Texas in the

-16-

criminal proceeding.  As earlier indicated, the Criminal
Complaint, while not explicit in describing the acts that are at
issue, appears to revolve around the Sales Transactions, since
the complained-of act is described as occurring "on or about the
6th day of January 1997" (the closing of both of the Sales
Transactions occurred on January 7, 1997) and the value of the
alleged theft that occurred was between $100,000 and $200,000
(the profit that the Defendant and/or UFC allegedly made in
connection with the Sales Transaction was $150,000).  In
addition, the criminal restitution payments are being turned over
to the Plaintiff by the State, further evincing an overlap of
interests.  The court finds that the Plaintiff has established
mutuality of the parties with regard to the Criminal Restitution
Order in that the Plaintiff's interests were represented in the
criminal action by the State of Texas.

Jumping back to the first element of collateral estoppel—
whether the facts of the first action were fully and fairly
litigated—three factors are important to this determination:  "1)
whether the parties were fully heard, 2) whether the court
supported its decision with a reasoned opinion, and 3) whether
the decision was subject to appeal or was in fact reviewed on
appeal." *State Farm Fire and Cas. Co. v. Fullerton*, 118 F.3d
374, 382 (5th Cir. 1997).  No-answer default judgments are
generally not entitled to preclusive effect in Texas. *Gober v.*

-17-

*Terra Corp.*, 100 F.3d 1195, 1204 (5th Cir. 1996); *see also Crain v. Limbaugh (In re Limbaugh)*, 155 B.R. 952, 955 (Bankr. N.D. Texas 1993). Accordingly, the Plaintiff cannot rely upon the Default Judgment to prove up his section 523(a)(4) cause. The Plaintiff relies, instead, upon the Defendant's guilty plea in the criminal action and upon the Criminal Restitution Order to show issue preclusion with regard to section 523(a)(4) and the debt created under the Default Judgment. Guilty pleas have been found to meet the "fully and fairly litigated" requirement for collateral estoppel because a hearing is held when the judge accepts the guilty plea, because there is no reason for a reasoned opinion with a guilty plea, and because the defendant in the criminal matter may be deemed to have had the opportunity to appeal when he pleads guilty. *Fullerton*, 118 F.3d at 382; *see also Brazzell v. Adams*, 493 F.2d 489 (5th Cir. 1974) (where a common fact issue was necessary to the earlier guilty plea and to the present civil suit such that collateral estoppel applied). The *Fullerton* court stated that a defendant "cannot take advantage of abstract legal statements designed to protect parties 'whose procedural predicament is not of their own making.'" *Id.* (citations omitted).

The Defendant's guilty plea of theft in connection with the Criminal Restitution Order has been fully and fairly litigated. The Defendant received a hearing before the criminal court when

-18-

he entered his plea. The criminal court did not need to issue an opinion because of the guilty plea, and the Defendant is precluded from asserting the failure to receive an appeal by virtue of his guilty plea. Therefore, the Plaintiff has, with regard to the Criminal Restitution Order, met the burden of proving the prior case of theft fully and fairly litigated. With regard to the Default Judgment, however, as indicated above, the Plaintiff cannot meet the burden of proving the prior case was fully and fairly litigated because "no-answer default judgments fail to meet the 'actually litigated' prong of the issue preclusion test" under Texas law. *Gober*, 100 F.3d at 1204.

The question remains, though, whether one can essentially meld the Default Judgment and Criminal Restitution Order together, as though they were one prior actually litigated action involving the same parties, and therefore together use them to collaterally estop Defendant from challenging the dischargeability of the Default Judgment (*i.e.,* the Category 1 damages in the Default Judgment). To answer this question, one needs to hone in on element number (2) of the collateral estoppel doctrine: whether the facts sought to be litigated in the second action were *essential to the judgment in the first action*. "The doctrine of collateral estoppel generally applies when the issue was fully and fairly litigated in the previous action and was essential to the judgment in the previous action." *Quinney*

-19-

*Elec., Inc. v. Kondos Entm't, Inc.*, 988 S.W.2d 212, 213 (Tex. 1999). The Plaintiff contends that the Defendant's guilty plea to second degree theft is equivalent to common law larceny in the federal courts. Defendant pled guilty to second degree theft. Second degree theft occurs when a person "unlawfully appropriates property with intent to deprive the owner of the property" when "the value of the property stolen is $100,000 or more but less than $200,000." Common law larceny arises form "felonious taking of another's personal property with intent to convert it or deprive the owner of same." *Clarendon Nat'l Ins. Co. v. Barrett (In re Barrett),* 156 B.R. 529, 533 n.3 (Bankr. N.D. Tex. 1993) (citation omitted). Thus, it is true that second degree theft under Texas law is very similar to common law larceny. A debt arising from common law larceny would be nondischargeable under 11 U.S.C. § 523(a)(4).

However, the problem with Plaintiff's approach is that the Probate Court awarded damages for *breach of fiduciary duties, constructive fraud and statutory fraud*. The criminal charge and subsequent guilty plea involved theft, only. Breach of fiduciary duty, constructive fraud and statutory fraud all involve establishing different elements than the criminal theft charge to which the Defendant pled guilty, notwithstanding Plaintiff's assertion that he moves under the larceny provision of section 523(a)(4). The Category 1 damages awarded under the Default

-20-

Judgment were awarded for fraud and breach of fiduciary duty, not larceny.  The Plaintiff has not demonstrated that the elements of theft or larceny were essential to the findings of fraud and breach of fiduciary duty in the Probate Court.  Plaintiff, therefore, cannot show that the factual issues leading to the Criminal Restitution Order are essential to the factual issues needed to show nondischargeability of the debt created by the Default Judgment.  The factual issue of whether the Defendant committed breach of fiduciary duty, constructive fraud, and statutory fraud (justifying an award of nearly $500,000) has never been fully and fairly litigated, and therefore, collateral estoppel does not apply to the dischargeability of the Default Judgment.

Accordingly, pursuant to the foregoing, the Plaintiff's Motion for Partial Summary Judgment is granted as to the amounts owing under the Criminal Restitution Order pursuant to sections 523(a)(4) (*i.e.,* larceny) and (a)(7)[4] (*i.e.,* Plaintiff is entitled to a $150,000 nondischargeable judgement, less whatever amounts have been paid thus far on that amount), but the Category 1 damages awarded under the Default Judgment are not found, at this stage, to be nondischargeable under section 523(a)(4) and the doctrine of collateral estoppel.

---

[4] *See Kelly v. Robinson*, 479 U.S. 36 (1986).

D. Statute of Limitations

The Defendant argues that he is entitled to summary judgment because the Plaintiff is barred from pursuing the causes of action of breach of fiduciary duty and fraud in Texas pursuant to the four-year state statute of limitations. "[T]he expiration of a state statute of limitations does not affect an action for non-dischargeability if there is a valid judgment." *Lee-Benner v. Gergely (In re Gergely)*, 110 F.3d 1449, 1453 (9th Cir. 1997); *see also Banks v. Gill Distribution Centers, Inc. (In re Banks)*, 263 F.3d 862, 867-68 (9th Cir. 2001). The creditor "is not seeking a new money judgment based on fraud; he is litigating the issue of dischargeability and the timeliness of the petition is governed by bankruptcy rules." *Id*. "[T]he question of the dischargeability of a debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law." *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331, 337 (10th Cir. 1994); *see also In re Banks*, 263 F.3d at 868. "[T]here are two distinct issues to consider in the dischargeability analysis: first, the establishment of the debt itself, which is subject to the applicable state statute of limitations; and, second, a determination as to the nature of the debt, an issue within the exclusive jurisdiction of the bankruptcy court and thus governed by Bankruptcy Rule 4007." *In re Banks*, 263 F.3d at 868 (*citing*

-22-

*In re McKendry*, 40 F.3d at 337); *see also Richardson v. Hidy Honda, Inc., (In re Richardson)*, 221 B.R. 956, 961 (D. Wyo. 1998).

The Defendant is attempting to penalize the Plaintiff for the Defendant's failure to answer the original civil complaint in probate court by now asserting that the state statute of limitations has run. Plaintiff has a valid (albeit not automatically nondischargeable) Default Judgment against Defendant based on breach of fiduciary duty, constructive fraud, and statutory fraud. The action in the Probate Court from which the Default Judgment arises was timely filed under Texas law. The Plaintiff has, therefore, properly established his debt before the state court. The Plaintiff must now show the nature of the debt is such that it is nondischargeable in order to prevail herein. That inquiry might include elements of fraud, but such inquiry is within the exclusive jurisdiction of this court. The Plaintiff herein is not seeking a new money judgment based upon fraud, but is litigating the dischargeability of a money judgment for fraud that has already been established by the Default Judgment. While the Plaintiff needs to prove up the elements of fraud to show that the debt is nondischargeable under section 523(a)(4), the dischargeability action is not subject to the Texas statute of limitations, but only to the limitations period set forth in section 523(c) and Fed. R. Bankr. P. 4007.

-23-

The Plaintiff filed this action less than two months after having discovered that the Defendant had filed bankruptcy.  Under the circumstances, and given that the parties agree that this adversary provides the Plaintiff with an opportunity to pursue his claim before this court, the court finds that this action was timely filed under Fed. R. Bankr. P. 4007.

Accordingly, the Defendant's motion for summary judgment is denied.

### IV.  CONCLUSION

Plaintiff is granted herein a summary judgment that the amounts owing under the Criminal Restitution Order are nondischargeable pursuant to sections 523(a)(4) and (a)(7) (*i.e.,* Plaintiff is entitled to a $150,000 nondischargeable judgement, less whatever amounts have been paid thus far on that amount).[5] There are disputed issues of material fact as to whether the Category 1 and Category 2 damages awarded under the Default Judgment are nondischargeable.  Plaintiff cannot use the collateral estoppel doctrine as to these and must litigate the disputed issues of fact in order to have the court consider whether these damages are nondischargeable.

---

[5] The fact that the criminal court or District Attorney could modify the restitution in the future is irrelevant to this court. The Plaintiff has shown theft/larceny in the amount of $150,000 was fully litigated in the criminal action, and the amount of the unpaid restitution award shall be considered a nondischargeable debt of the Defendant.

Orders will be issued consistent with this opinion.

### END OF MEMORANDUM OF OPINION ###